IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION

MICHELLE BRAY,

    Plaintiff,

                               CASE NO.:

-vs-

ONEMAIN FINANCIAL GROUP, LLC,

    Defendant.

_____/

## COMPLAINT

COMES NOW, Plaintiff, by and through the undersigned counsel, and sues Defendant, ONEMAIN FINANCIAL GROUP, LLC, d/b/a ONEMAIN FINANCIAL ("ONEMAIN FINANCIAL"), and in support thereof respectfully alleges violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA").

## INTRODUCTION

1. The TCPA was enacted to prevent companies like ONEMAIN FINANCIAL from invading American citizen's privacy and to prevent abusive "robo-calls."

2. "The TCPA is designed to protect individual consumers from receiving intrusive and unwanted telephone calls." *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740 (2012).

3. "Senator Hollings, the TCPA's sponsor, described these calls as 'the **\*1256** scourge of modern civilization, they wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall." 137 Cong. Rec. 30, 821 (1991). "Senator Hollings presumably intended to give telephone subscribers another option: telling the autodialers to simply stop calling." *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242 (11th Cir. 2014).

4. According to the Federal Communications Commission (FCC), "Unwanted calls and texts are the number one complaint to the FCC. There are thousands of complaints to the FCC every month on both telemarketing and robocalls. The FCC received more than 215,000 TCPA complaints in 2014." *Fact Sheet: Wheeler Proposal to Protect and Empower Consumers Against Unwanted Robocalls, Texts to Wireless Phones*, Federal Communications Commission, (May 27, 2015), https://apps.fcc.gov/edocs_public/attachmatch/DOC-333676A1.pdf.

## JURISDICTION AND VENUE

5. Jurisdiction and venue for purposes of this action are appropriate and conferred by 28 U.S.C. § 1331, Federal Question Jurisdiction, as this action involves violations of the TCPA.

6. Subject matter jurisdiction, federal question jurisdiction, for purposes of this action is appropriate and conferred by 28 U.S.C. § 1331, which provides that the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States; and this action involves violations of 47 U.S.C. § 227(b)(1)(A)(iii). See *Mims v. Arrow Fin. Servs., LLC*, S.Ct. 740, 748 (2012) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1249 (11th Cir. 2014).

7. Venue is proper in this District as Plaintiff resides within this District (Fayette County, Kentucky), the violations described in this Complaint occurred in this District and the Defendant transacts business within Fayette County, Kentucky.

## FACTUAL ALLEGATIONS

8. Plaintiff is a natural person, and citizen of the State of Kentucky, residing in Lexington, Fayette County, Kentucky.

9. Plaintiff is the "called party." See *Breslow v. Wells Fargo Bank, N.A.*, 755 F. 3d 1265 (11th Cir. 2014) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir. 2014).

10. Defendant is a corporation which was formed in Delaware doing business in the State of Kentucky and with its Registered Agent, C T Corporation System, 306 W. Main Street, Suite 512, Frankfort, Kentucky 40601.

11. Plaintiff is the regular user and carrier of the cellular telephone number at issue, (859) *** - 2834, and was the called party and recipient of Defendant's hereinafter described calls.

12. In or about November of 2014, Defendant initiated its campaign of automated phone calls to the Plaintiff on her aforementioned cellular telephone. Upon receipt of the calls, Plaintiff's caller ID identified that the calls were being initiated from, but not limited to, the following phone numbers: (859) 246-1453 and (888) 452-7498, and when those numbers are called, a recording begins that states: "For service in English, press 1. Para Español, marque dos. Thank you for calling OneMain Financial. Your call may be monitored or recorded for quality control purposes."

13. Upon information and belief, some or all of the calls Defendant made to Plaintiff's cellular telephone number were made using an "automatic telephone dialing system" which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator (including but not limited to a predictive dialer) or an artificial or prerecorded voice; and to dial such numbers as specified by 47 U.S.C § 227(a)(1) (hereinafter "autodialer calls"). Plaintiff will testify that she knew it was an autodialer because of the vast number of calls she received and because when she would answer the phone, a pre-recorded message would play stating that the call was from OneMain Financial and to please hold the line for a very important message from OneMain Financial for Michelle Bray.

14. Furthermore, each of the calls at issue were placed by the Defendant using a "prerecorded voice," as specified by the TCPA, 47 U.S.C. § 227(b)(1)(A).

15. None of Defendant's telephone calls placed to Plaintiff were for "emergency purposes" as specified in 47 U.S.C. § 227(b)(1)(A).

16. In or about early December of 2014, due to the ceaseless barrage of phone call received from the Defendant, Plaintiff answered a call from Defendant, met with a live agent named "Janelle", and informed "Janelle" that she was aware of her financial obligations and demanded that Defendant cease placing calls to all telephone numbers associated with her account, including her cellular telephone.

17. During the aforementioned December of 2014 phone conversation with Defendant's agent/representative, Plaintiff expressly revoked any consent Defendant may have believed it had to Defendant's placement of telephone calls to Plaintiff's aforementioned cellular telephone number by the use of an automatic telephone dialing system or a pre-recorded or artificial voice.

18. Each subsequent call the Defendant made to the Plaintiff's aforementioned cellular telephone number was done so without the "express consent" of the Plaintiff.

19. Again, in December of 2014, due to the ceaseless barrage of telephone calls received from the Defendant, Plaintiff answered a call from Defendant, demanded to speak with a supervisor, was connected to a representative named "Chad", informed "Chad" that she had previously demanded Defendant stop calling her cellular telephone, and again demanded that Defendant cease placing calls to all telephone numbers associated with her account, including her cellular telephone number.

20. On December 11, 2014, due to the continued calls to her aforementioned cellular telephone number by Defendant, Plaintiff faxed a letter to the Defendant, demanded that no calls be placed to any number listed on her account, including relatives, references and third parties, requested no further correspondence at all, and informed Defendant she would be seeking an attorney if these requests were not followed.

21. Again, on December 31, 2014, due to the continued calls to her aforementioned cellular telephone number by Defendant, Plaintiff faxed a second letter to Defendant (please see attached **Exhibit "A"**), demanded that no calls be placed to any phone number listed on the account, requested no further correspondence, and informed Defendant she would seek an attorney and file a formal complaint if her requests were not honored.

22. Again on May 31, 2016, due to continued calls to her aforementioned cellular telephone number from the Defendant, Plaintiff again answered a call from Defendant, met with an automated message stating that the call was from OneMain Financial and to please hold to be connected with a live representative, held the line, was eventually connected to a live agent/representative of Defendant named "Josh", and informed "Josh" that Defendant was not supposed to be calling her on her cellular telephone, and again demanded that Defendant cease placing calls to her aforementioned cellular telephone number.

23. Each of Plaintiff's conversations with the Defendant demanding an end to the harassment were ignored.

24. Despite actual knowledge of their wrongdoing, the Defendant continued the campaign of abuse, calling the Plaintiff despite not having her express consent to call her aforementioned cellular telephone number.

25. From about December of 2014 through the filing of this Complaint, Defendant has made over two-hundred fifty (250) calls to Plaintiff's cellular telephone number, or as will be established after a thorough review of Defendant's records. (Please see attached **Exhibit "B"** representing a non-exclusive call log of eighty-three (83) calls from November 16, 2015 to June 17, 2016).

26. As a result of the aforementioned tenacious collection efforts, Plaintiff was affected, both personally and individually, as she experienced an invasion of privacy, anxiety, intimidation, and emotional distress. Plaintiff suffered expenditure of her time, exhaustion of Plaintiff's cellular telephone battery, unavailability of the cellular telephone while ringing, and trespass upon the Plaintiff's chattels. All of the above were caused by, and/or directly related to, Defendant's attempts "to collect a debt" allegedly owed by Plaintiff by using an ATDS/Predictive Dialer to call Plaintiff's cellular telephone number.

27. Further, as a result of Defendant's ceaseless barrage of calls to Plaintiff's aforementioned cellular telephone number, Plaintiff has suffered from stress and embarrassment while receiving the aforementioned "debt collection" calls from Defendant while in the presence of her spouse.

28. Defendant has a corporate policy to use an automatic telephone dialing system or a pre-recorded or artificial voice, just as they did to the Plaintiff's cellular telephone in this case, with no way for the consumer, or Defendant to remove the number.

29. Defendant's corporate policy is structured so as to continue to call individuals like Plaintiff, despite these individuals explaining to Defendant they do not wish to be called.

30. Defendant's corporate policy provided no means for Plaintiff to have Plaintiff's number removed from Defendant's call list.

31. Defendant has numerous other federal lawsuits pending against them alleging similar violations as stated in this Complaint.

32. Defendant has numerous complaints against it across the country asserting that its automatic telephone dialing system continues to call despite being requested to stop.

33. Defendant has had numerous complaints against it from consumers across the country asking to not be called; however, Defendant continues to call these individuals.

34. Defendant willfully and/or knowingly violated the TCPA with respect to Plaintiff.

## COUNT I
### (Violation of the TCPA)

35. Plaintiff fully incorporates and realleges paragraphs one (1) through thirty-four (34) as if fully set forth herein.

36. Defendant willfully violated the TCPA with respect to Plaintiff, specifically for each of the auto-dialer calls made to Plaintiff's cellular telephone after Plaintiff notified Defendant that Plaintiff wished for the calls to stop.

37. Defendant repeatedly placed non-emergency telephone calls to Plaintiff's cellular telephone using an automatic telephone dialing system or prerecorded or artificial voice without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant for statutory damages, punitive damages, actual damages, treble damages, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

Respectfully submitted,

*/s/ Andrea Wasson*
Andrea L. Wasson, Esquire

WASSON & THORNHILL, PLLC
3000 Breckenridge Lane
Louisville, KY 40220
(502) 964-7878
(855) 257-9256 FAX
andrea@wassonthornhill.com
Attorney for Plaintiff